UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 23, 2006[*]
Decided August 28, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-3996

| | |
|---|---|
| BILL O. MCCLAIN, JR.,<br>   *Plaintiff-Appellant,*<br><br>   *v.*<br><br>D. LEISURE, et al.,<br>   *Defendants-Appellees.* | Appeal from the United States<br>District Court for the<br>Southern District of Indiana,<br>Indianapolis Division<br><br>No. 1:03-CV-703-RLY-TAB<br><br>**Richard L. Young**, *Judge.* |

**O R D E R**

  Bill McClain, Jr., an inmate at Wabash Valley Correctional Facility in Carlisle, Indiana, filed suit under 42 U.S.C. § 1983 against fourteen defendants who he claimed violated his constitutional rights by retaliating against him for filing a grievance against a prison employee and by confiscating two paintings that depicted Nazi imagery. The district court dismissed several of his claims under 28 U.S.C. § 1915A

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

and granted summary judgment for the defendants on the remaining claims. McClain appeals, and we affirm.

In December 2002, McClain filed an inmate grievance against David Leisure, a "Recreation Leader" at the prison. McClain asserted that he asked Leisure when the arts and crafts area would be open and Leisure replied that he didn't care about arts and crafts. McClain also disparaged Leisure's "cognitive skills." In response to the grievance, Leisure stated that McClain was lying. McLain's grievance was denied. The grievance specialist explained that arts and crafts is the least popular recreational activity at the facility, and that it is therefore the first to close when staffing is insufficient.

In the meantime, Leisure wrote up a conduct report accusing McClain of making "fictitious and libelous" statements about him. McClain was found guilty of making false statements and given a written reprimand. The outcome was reversed for insufficient evidence, however, based on a provision in the Operational Procedures of the Indiana Department of Corrections stating: "Conduct reports shall not be written for lying to staff based upon what the complaint/grievance contains, unless it can be proven that the offender intentionally provided false information in an attempt to harm staff, impair the operation of the facility, or overload the grievance process." The conviction was expunged from McClain's record.

In a separate incident, in January 2003, a conduct report was filed against McClain after he painted a picture that contained symbols affiliated with a "security threat group." The painting, which depicted Adolph Hitler and three SS officers wearing swastikas, was confiscated, and McClain was penalized with the revocation of 60 days of good-credit time upon his conviction for possessing security threat group materials. Then, in March 2003, recreation staff reported to corrections officer Rob Marshall that McClain was completing another painting that contained imagery with a security threat group affiliation. Marshall, whose responsibilities included monitoring gang activity within the prison, inspected the painting and confirmed that it contained symbols associated with white supremacy but also with the Asatru religion, of which McClain is an adherent. Marshall confiscated the painting because of the white supremacist imagery but noted that McClain would not be disciplined because the painting also depicted a religious symbol. Marshall advised McClain in a letter that "any time you draw, paint, display, or possess security group threat items you are violating Executive Directive 96-25," the zero-tolerance policy against gangs and gang symbols. Marshall warned that future violations would result in disciplinary action. McClain had been warned previously by recreation staff that if he did not paint over the symbols, his painting would be confiscated. Ultimately, McClain was permitted to mail both of the offending paintings outside the prison.

In May 2003 McClain sued Leisure, Marshall, and a host of other defendants claiming that they violated his rights to due process, free exercise of his religion, and freedom of speech in connection with the confiscation of his paintings, the disciplinary proceedings, and his grievance against Leisure. In November, the district court entered an initial order dismissing on the basis of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), "any claim which is based on an assertedly invalid prison disciplinary proceeding which resulted in the loss of earned good time credit." Though the district court did not refer specifically to any of McClain's claims, under the terms of the order any claim implicating the disciplinary proceedings that accompanied the confiscation of McClain's first painting was dismissed (he was not charged with a violation for the second painting). However, when the court revisited McClain's complaint at the screening stage, it addressed all his claims without mentioning its previous order dismissing some on the ground that they were *Heck*-barred. The court concluded that McClain failed to state a claim on which relief could be granted with respect to the majority of his contentions. *See* 28 U.S.C. § 1915A(b)(1).

The district court allowed McClain to proceed on three claims. The first accused Leisure of denying McClain access to the courts by filing a conduct report in response to his grievance about the lack of arts and crafts time. McClain also claimed that Leisure violated his right to free speech by retaliating against him for filing a grievance. Finally, McClain claimed that Marshall violated his rights to free speech and free exercise of his religion when he confiscated the second painting depicting white supremacist and Asatru imagery.

McClain and the defendants both moved for summary judgment. The district court granted the defendants' motion. First, the court held that McClain's claim about denial of access to the courts failed because, having never attempted to bring a lawsuit based on his lack of access to the arts and crafts area, he could establish no actual injury as a result of Leisure's conduct. The Court next rejected McClain's retaliation claim, concluding that the undisputed evidence demonstrated that Leisure filed the conduct report based on his belief that McClain's statements about him in the grievance were considered false statements in violation of the disciplinary procedures. Though the conduct report was ultimately deemed to be a violation of policy, the court held, Leisure nevertheless did not possess a retaliatory motive in filing it. Finally the court granted summary judgment for the defendants on McClain's claim that Marshall's confiscation of his second painting violated the First Amendment, holding that McClain's rights had to yield to the prison's legitimate regulations designed to prevent hostility and violence among inmates.

Before we address McClain's arguments on appeal, we note that in its order of September 21, 2004, the district court denied McClain's request to proceed *in forma*

*pauperis* on appeal because he was attempting to challenge the court's dismissal of his "legally insufficient claims" at screening though no final appealable order had yet been entered. The court reasoned that an interlocutory appeal of the dismissals was brought in "bad faith," because no reasonable person could believe the appeal had merit. *See Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). We understand the district court to have deemed the appeal frivolous only because it was brought prematurely; a number of claims were still pending. In general, appealing from the dismissal of claims under § 1915A(b) is akin to appealing from a dismissal under Federal Rule of Civil Procedure 12(b)(6), and nothing is inherently frivolous about such an appeal.

On appeal, McClain challenges the district court's dismissal of seven of his claims for failure to state a claim upon which relief can be granted and its grant of summary judgment for the defendants on the remaining three claims. We review *de novo* the dismissal of McClain's claims under § 1915A, s*ee Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004), as well as the grant of summary judgment in favor of the defendants, *see Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

The district court had it right when it initially dismissed a handful of McClain's claims under *Heck*. The claims he labels as Claims IV, V, VI, VII, and VIII all challenge the confiscation of the first painting, the conduct report filed on January 22, 2003, and disciplinary proceedings that followed. In *Edwards*, the Supreme Court extended the rule of *Heck* to bar claims that, if established, would necessarily imply the invalidity of a disciplinary conviction that was the basis for the deprivation of an inmate's good-time credits. 520 U.S. at 646-47; *see DeWalt v. Carter*, 224 F.3d 607, 615 (7th Cir. 2000); *Lusz v. Scott*, 126 F.3d 1018, 1021-22 (7th Cir. 1997). McClain stands convicted of violating the prison's Adult Disciplinary Procedures, ¶ B-246, pertaining to the possession of security threat group materials. As a result he lost 60 days of earned credit time. If McClain were granted relief on his claims that the confiscation of the painting and the procedures under which he was disciplined violated his rights to due process and free speech, the validity of his conviction and the attendant sanctions would be undermined. *See Edwards*, 520 U.S. at 646-47; *Lusz*, 126 F.3d at 1021. His claims are not cognizable under § 1983 unless the conviction is invalidated. We do not know why the district later revisited these claims, and effectively dismissed them for a second time, but we affirm the dismissal of claims IV through VIII on the ground that they are barred by *Heck*.

Despite the affirmance on *Heck* grounds, we note that the district court's subsequent analysis of at least one of those claims was not entirely accurate. The district court dismissed (again) Claim IV, holding that McClain did not state a claim for relief under the First Amendment because he had adequate post-deprivation remedies available. We assume, though the district court did not elaborate, that it was

referring to the Indiana Tort Claims Act, *see* Indiana Code § 34-13-3-1 *et seq.* And it is true that the unauthorized intentional taking of a prisoner's property does not violate due process so long as there are meaningful postdeprivation remedies for the loss. *See Hudson v. Palmer*, 486 U.S. 517, 533 (1984); *Wynn v. Southward*, 251 F.3d 588, 592-93 (7th Cir. 2001). But McClain attacks the confiscation on First Amendment grounds—he argues that his painting constitutes protected speech and that by ordering him to alter the painting or lose it, the defendants (three recreation leaders) violated his right to free speech—*so Hudson* is inapposite. The existence of post-deprivation remedies is relevant only to due process claims; *Hudson* and its predecessor, *Parratt v. Taylor*, 451 U.S. 527 (1981), do not reach "a challenge to policy." *Caldwell v. Miller*, 790 F.2d 589, 608 (7th Cir. 1986); *see Labov v. Lalley*, 809 F.2d 220, 223 (3d. Cir. 1987). Moreover, we are not persuaded that *Hudson* provided a sound basis on which to reject the related due process claim. McClain alleged that he was deprived of property pursuant to a formal policy, not that the deprivation was "unauthorized." *See Hudson,* 468 U.S. at 532-33; *Stewart v. McGinnis,* 5 F.3d 1031, 1035-36 (7th Cir. 1993) (explaining that *Hudson* applies when the confiscation of inmate property is "random and unauthorized" but not when it occurs pursuant to state procedures).

We turn now to the claims that survived to summary judgment. McClain claims that Marshall's confiscation of the second painting violated his rights to free speech and freedom of religion. Restrictions on an inmate's freedom of expression are valid only if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). In considering whether a given prison regulation is constitutional, we analyze four factors: whether the regulation is rationally related to a legitimate and neutral governmental objective; whether alternative means of exercising the right remain open to the inmate; what impact an accommodation of the asserted right will have on guards and other inmates; and whether obvious alternatives to the regulation exist that show the regulation is an exaggerated response to prison concerns. *Turner*, 482 U.S. at 89-91; *Lindell*, 377 F.3d at 657. The district court addressed only McClain's free-exercise claim, perhaps overlooking the free-speech claim, but we note that *Turner*'s framework applies equally to both. *See Kaufman v. McCaughtrey*, 419 F.3d 678, 682-83 (7th Cir. 2005) (free-exercise claim); *Lindell*, 377 F.3d at 657 (free-speech claim).

Summary judgment was properly granted. McClain did not counter, with admissible evidence, Marshall's affidavit in which he attests that inmates are not permitted to possess or display items depicting a "security threat group affiliation" in order to prevent them from proclaiming affiliations with gangs and to decrease hostility and violence "among groups of offenders." The policy in question, Executive Directive 96-25, espouses "zero tolerance" for the gang-related activities and forbids the possession of symbols associated with gangs. Gang suppression is a legitimate penological interest. *See Wilkinson v. Austin*, 125 S. Ct. 2384, 2396-97 (2005); *Westefar*

*v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005) ("The decision of prison administrators as to the detrimental effect of such groups is a decision to which we owe great deference."). As the prison's Security Group Threat Coordinator, Marshall determined that the imagery in McClain's painting violated the regulation and had the potential to incite hostility or violence. Given the importance of the security objective at stake and the absence of plausible way in which to accommodate McClain's desire to create potentially incendiary artwork, the restrictions on his rights comport with the requirements of *Turner*.

McClain also argues that Executive Directive 96-25 itself casts "an enormous net" and is "an end run" around the Constitution. To the extent that McClain challenges the policy as overbroad, his argument is unavailing given the encroachment permitted on a prisoner's First Amendment rights. As we have recently noted, "[w]hatever scope overbreadth analysis has in criminal prosecutions . . . it has little or none in civil litigation dealing with prisons' internal operations." *Borzych v. Frank*, 439 F.3d 388, 391-92 (7th Cir. 2006); *see Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986) (rejecting challenge to regulation against "indecent language" because "the concepts of 'overbreadth' and 'vagueness' in the jurisprudence of the First Amendment were devised in order to prevent the slightest discouragement of free speech, and therefore have only limited relevance to a sphere where the right of free speech is limited").

Turning to McClain's retaliation claim against David Leisure, McClain next argues that the district court improperly granted summary judgment for Leisure based on "semantics" when it concluded that Leisure filed a conduct report not because McClain exercised his right to file a grievance, but because of the untrue assertions he made. A prisoner is entitled to use grievance procedures without fear of recrimination, and if a prison official retaliates, he violates the inmate's First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). To succeed on his claim, McClain was required to prove that his protected conduct—filing the grievance—was a motivating factor behind Leisure's conduct report. *Hasan v. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Babcock*, 102 F.3d at 275. In *Hasan*, a prisoner filed a grievance against a guard, and after the accusation was found to be groundless, the prisoner was punished for "lying about staff." *Hasan*, 400 F.3d at 1005. We rejected the retaliation claim because the prisoner was punished for making false accusations, not for his exercise of a First Amendment right. *Id.* In this case too we have uncontradicted evidence in the form of Leisure's affidavit that the conduct report was filed because of McClain's false statements. That Leisure failed to recognize that a conduct report was not an appropriate response under DOC policy does not detract from the conclusion. Moreover, no harm ultimately came to McClain because the conviction for lying and the written reprimand were

expunged from his record.  Filing the conduct report was a mistake but it was not a constitutional tort.

McClain's remaining arguments do not merit discussion.  The judgment of the district court is **AFFIRMED**.